FILED
DEC 1 8 2013
U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **4:13CR520 RWS/NAB** |
| ) | |
| v.    ) | No. |
| ) | |
| SHEILA AUBUCHON, ) | |
| ) | |
| Defendant. ) | |

## INDICTMENT

The Grand Jury charges that:

### BACKGROUND

1. Beginning in approximately 1990 and continuing until approximately January 2011, the defendant, SHEILA AUBUCHON, was employed by Belgrade State Bank. At all such times, Belgrade State Bank (the "Bank") was a financial institution insured by the Federal Deposit Insurance Corporation.

2. At all times pertinent to this Indictment, AUBUCHON held the title of branch manager.

3. As a bank employee, AUBUCHON was also required to comply with the provisions of the Bank Secrecy Act (BSA). The BSA and regulations promulgated thereunder required, among other things, that bank employees file a Currency Transaction Report (CTR) whenever the employee processes a cash transaction involving more than $10,000.00.

4. Specifically, 31 U.S.C. § 5313 requires that, whenever a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of U.S. coins or currency in a

certain amount prescribed by regulation, the institution, as well as any other person prescribed by the regulation, must file a report of the transaction that identifies, among other things, the person for whom the transaction is being made. The regulations promulgated by the Secretary of Treasury, then collected at 31 C.F.R. § 103.22, required that "[e]ach financial institution other than a casino shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer by, through, or to such financial institution which involves a transaction in currency of more than $10,000," with certain exceptions not applicable in this case.

5. In her capacity as branch manager, AUBUCHON had access to the bank account information of all customers of the Bank. The Bank utilized a computer system, known as "Vision," which allowed users, including AUBUCHON, to access the account information of individuals who held accounts at the Bank. Access to the Vision system required a user to log on to the system using a username and password, each of which was unique to the user.

## THE SCHEME

6. Beginning at a time unknown to the Grand Jury but at least as early as March 19, 2007 and continuing through January, 2011, AUBUCHON devised a scheme to defraud the Bank and to obtain money and property owned by, and under the custody of the Bank, by abusing her position of trust within the Bank in order to improperly direct funds owned by the Bank and its customers to her personal use and benefit, through the use of material false representations, both express and implied, forgery and falsification of documents, and active concealment of material information from the Bank and its customers.

## MANNER AND MEANS OF THE SCHEME

7. The manner and means of the scheme are further described as follows:

a. It was a part of the scheme that AUBUCHON utilized her access to customer account information through the Vision system to retrieve account information for individuals that she identified might be vulnerable to theft and fraud because, for example, they only infrequently accessed their account information or came into the Bank, because they were elderly or disabled, or because they were recently deceased. AUBUCHON would access these individuals' account information close in time to her fraudulent activity, sometimes within minutes of the fraudulent transaction. AUBUCHON also kept records in her office reflecting the obituaries of recently deceased individuals, a number of whom became the victims of her crimes.

b. It was further a part of the scheme that AUBUCHON utilized various means to misdirect the funds of her victims to her own use and benefit. Such means included AUBUCHON's forgery of signatures and initials of other individuals, AUBUCHON's creation of false documents reflecting transactions and requests for transactions never authorized by the Bank or the customer, and AUBUCHON's unauthorized revision and modification of customer account information.

c. It was further a part of the scheme that AUBUCHON would conceal her fraudulent activities by processing transactions involving more than $10,000.00 in cash without preparing or requesting another employee to complete a Currency Transaction Report ("CTR") as required by federal law. AUBUCHON was aware of the requirements of federal laws and regulations, as evidenced by her training and the fact that she did fill out such forms for other transactions in accordance with such laws and regulations. AUBUCHON's purpose in failing to comply with these laws and regulations was to prevent or hinder the detection of her fraudulent activities.

d. It was further a part of the scheme that AUBUCHON would evade bank procedures

relating to the endorsement of documents, proofing, balancing, and withdrawal of cash in order to conceal her involvement in the aforementioned transactions.

e. It was further a part of the scheme that AUBUCHON would alter the account number on certain transaction records to indicate her personal account number, thus falsely representing that she had the authority to deposit the underlying funds into her personal account when, in truth and fact, she did not.

f. It was further a part of the scheme that AUBUCHON would often conduct her fraudulent activities within the bank outside of normal business hours, including during times when she had not clocked in, in an effort to conceal her involvement in the fraudulent transactions.

g. It was further a part of the scheme that, when other bank employees would inquire as to the nature of suspicious transactions, AUBUCHON would provide false explanations for any discrepancies in an attempt to deflect suspicion from herself and to falsely implicate others. In instances where AUBUCHON was requested by others to investigate potential suspicious transactions, AUBUCHON would falsely report back that the transaction "checked out," i.e., that it did not appear to be fraudulent, when AUBUCHON well and truly knew that the transaction had been fraudulently conducted.

h. It was further a part of the scheme, and a result of the scheme, that AUBUCHON fraudulently obtained in excess of $120,000.00 of funds owned by Belgrade State Bank and its customers, which funds were used by AUBUCHON for her own personal use.

## COUNT I
### (Bank Fraud)

8. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby

incorporated by reference as if fully set forth herein.

9. On or about November 18, 2010, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

### SHEILA AUBUCHON

knowingly executed and attempted to execute the above-described scheme and artifice to defraud a financial institution, Belgrade State Bank, and to obtain the moneys, funds, credits, and other property owned by, and under the custody or control of Belgrade State Bank, by means of material false and fraudulent pretenses, representations, and promises, by redeeming and cashing out a certificate of deposit in the name of an individual with the initials C.P. in the amount of $36,121.40 without the authorization, consent, or knowledge of C.P. or Belgrade State Bank.

In violation of Title 18, United States Code, Section 1344.

### COUNT II
### (Bank Fraud)

10. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby incorporated by reference as if fully set forth herein.

11. On or about August 23, 2010, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

### SHEILA AUBUCHON

knowingly executed and attempted to execute the above-described scheme and artifice to defraud a financial institution, Belgrade State Bank, and to obtain the moneys, funds, credits, and other property owned by, and under the custody and control of Belgrade State Bank, by means of material false and fraudulent pretenses, representations, and promises, by withdrawing cash from

the account of an individual with the initials G.J. in the amount of $16,258.07 without the authorization, consent, or knowledge of G.J. or Belgrade State Bank.

In violation of Title 18, United States Code, Section 1344.

## COUNT III
### (Bank Fraud)

12. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby incorporated by reference as if fully set forth herein.

13. On or about May 26, 2010, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

### SHEILA AUBUCHON

knowingly executed and attempted to execute the above-described scheme and artifice to defraud a financial institution, Belgrade State Bank, and to obtain the moneys, funds, credits, and other property owned by, and under the custody and control of Belgrade State Bank, by means of material false and fraudulent pretenses, representations, and promises, by redeeming and cashing out a certificate of deposit in the name of an individual with the initials Z.K. in the amount of $10,000.00 without the authorization, consent, or knowledge of Z.K. or Belgrade State Bank..

In violation of Title 18, United States Code, Section 1344.

## COUNT IV
### (Theft, Embezzlement or Misapplication by Bank Employee)

14. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby incorporated by reference as if fully set forth herein.

15. On or about November 23, 2009, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

**SHEILA AUBUCHON**

being herself an employee of Belgrade State Bank, the foregoing bank insured by the Federal Deposit Insurance Corporation, did embezzle, abstract, purloin, and willfully misapply moneys, funds, and assets entrusted to the care of such bank, to wit, a certificate of deposit in the name of an individual with the initials C.P. in the amount of $24,194.70, which amount exceeded $1,000.00.

In violation of Title 18, United States Code, Section 656.

## COUNT V
**(Theft, Embezzlement or Misapplication by Bank Employee)**

16. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby incorporated by reference as if fully set forth herein.

17. On or about March 19, 2007, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

**SHEILA AUBUCHON**

being herself an employee of Belgrade State Bank, a bank insured by the Federal Deposit Insurance Corporation, did embezzle, abstract, purloin, and willfully misapply moneys, funds, and assets entrusted to the care of such bank, to wit, $2,000.00, representing funds deposited in the account of an individual with the initials R.L., which amount exceeded $1,000.00.

In violation of Title 18, United States Code, Section 656.

## COUNT VI
**(Theft, Embezzlement or Misapplication by Bank Employee)**

18. Each of the allegations in Paragraphs 1 through 7 of this Indictment are hereby incorporated by reference as if fully set forth herein.

19. On or about February 13, 2009, in Potosi, Missouri, within the Eastern District of

Missouri, the Defendant

### SHEILA AUBUCHON

being herself an employee of Belgrade State Bank, a bank insured by the Federal Deposit Insurance Corporation, did embezzle, abstract, purloin, and willfully misapply moneys, funds, and assets entrusted to the care of such bank, to wit, $1,779.20, representing funds deposited in the account of an individual with the initials R.B., which amount exceeded $1,000.00.

In violation of Title 18, United States Code, Section 656.

### COUNT VII
### (Willful Violation of Reporting Requirements)

20. Each of the allegations in Paragraphs 1 through 19 of this Indictment are hereby incorporated by reference as if fully set forth herein.

21. On or about September 7, 2010, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

### SHEILA AUBUCHON

did cause Belgrade State Bank, a financial institution insured by the Federal Deposit Insurance Corporation, to fail to file a report required under 31 U.S.C. § 5313 and 31 C.F.R. § 103.22, a regulation prescribed under subchapter II of Chapter 63 of Title 31 of the United States Code, to wit, a Currency Transaction Report reflecting the withdrawal of $16,258.07 in cash from the account of an individual with the initials G.J., and did so while violating another law of the United States, to wit, Title 18, United States Code, Sections 656 and 1344, as set forth herein.

In violation of Title 31, United States Code, Sections 5313 and 5324(a)(1).

## COUNT VIII
### (Willful Violation of Reporting Requirements)

22. Each of the allegations in Paragraphs 1 through 19 of this Indictment are hereby incorporated by reference as if fully set forth herein.

23. On or about September 27, 2010, in Potosi, Missouri, within the Eastern District of Missouri, the Defendant

**SHEILA AUBUCHON**

did cause Belgrade State Bank, a financial institution insured by the Federal Deposit Insurance Corporation, to fail to file a report required under 31 U.S.C. § 5313 and 31 C.F.R. § 103.22, a regulation prescribed under subchapter II of Chapter 63 of Title 31 of the United States Code, to wit, a Currency Transaction Report reflecting the purchase of a cashier's check to CitiBank for $14,000.00 in the name of Sheila Aubuchon, and did so while violating another law of the United States, to wit, Title 18, United States Code, Sections 656 and 1344, as set forth herein.

In violation of Title 31, United States Code, Sections 5313 and 5324(a)(1).

### FORFEITURE ALLEGATIONS

24. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1344 as set forth in Counts I through III, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to said offense. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said offense.

25. Pursuant to Tile 18, United States Code, Section 982(a)(2), upon conviction of an

offense in violation of Section 656 as set forth in Counts IV through VI, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such offense. Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such offense.

26. Pursuant to Title 31, United States Code, Section 5317(c)(1)(A), upon conviction of an offense in violation of Title 31, United States Code, Sections 5313 and 5324(a) as set forth in Counts VII and VIII, the defendant shall forfeit to the United States of America any property, real or personal, involved in the offense and any property traceable thereto. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, involved in the offense and any property traceable thereto.

27. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
RICHARD E. FINNERAN, #60768
Assistant United States Attorney